IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JANICE EDWINA DEMMITT | § | |
| | § | |
| v. | § | 2:15-CV-0059 |
| | § | |
| UNITED STATES OF AMERICA | § | |

## REPORT AND RECOMMENDATION
## TO DENY MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Defendant JANICE EDWINA DEMMITT has filed a Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. For the reasons hereinafter expressed, the undersigned finds defendant's claims are without merit and recommends those claims be DENIED.

### I.
### FACTUAL AND PROCEDURAL HISTORY

On April 2, 2010, defendant was charged by indictment with the felony offenses of one count of conspiracy to launder monetary instruments, fifteen (15) counts of wire fraud, and eleven (11) counts of money laundering. *United States v. Demmitt*, No. 2:11-CR-0027(2). Co-defendant Timothy Fry, defendant's son, was also charged with the offenses with the exception of one of the money laundering counts.

On July 28, 2011, co-defendant Fry pled guilty to one (1) count of money laundering and submitted a signed Factual Resume in connection with his plea. The Factual Resume stated:

> Between 2006 and 2009, Timothy Fry and his mother Janice Demmitt, ran an insurance agency in Amarillo, Texas. As part of this business they sold annuities to investors as registered agents of Allianz Life Insurance Company of North America, Minneapolis, Minnesota. Janice Demmitt was the owner of the business and Timothy Fry worked as an agent in the business. The majority of the clients of the business were elderly

investors, including Richard Burdett, Ruby Goodwin, Dennis Clower and James and Georgiann McCormick. Beginning in about 2007 and continuing until about 2008, Fry and Demmitt, began to encourage their clients to purchase new Allianz annuities or add to their existing Allianz annuities. The defendants represented to their clients that Allianz would "match" each investment up to $100,000. The defendants encouraged their investors to either cash in or borrow against existing annuities held with Allianz and to use those proceeds to reinvest in order to gain the "matching" funds. The defendants sent faxes to Allianz to liquidate their clients' investment annuities. The faxes were sent from Amarillo, Texas to the Allianz company in Minneapolis, Minnesota. The funds were then returned from Allianz to the clients, and provided to the defendants purportedly to be reinvested and matched. Instead of reinvesting the funds like they told their clients they would do, Fry and Demmitt deposited the monies into their personal accounts. The defendants tricked investors by the promise of the matching investment money in order to liquidate the clients legitimate investment accounts and the clients entrusted their money to the defendants to be reinvested for investors. In excess of $600,000 in client funds was transferred into the personal investment and banking accounts of Fry and Demmitt.

On or about November 20, 2007, in the Amarillo Division of the Northern District of Texas, and elsewhere, the defendants, Timothy Joel Fry and Janice Edwina Demmitt, aided and abetted by each other, did knowingly engage and attempt to engage in a monetary transaction by through and to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is, the transfer and deposit of $25,000 into their personal bank account, said money having been derived from a specified unlawful activity, that is, wire fraud in violation of 18 U.S.C. § 1343. In violation of 18 U.S.C. §§ 1957 and 2.

Pursuant to a Plea Agreement entered the same day, Fry stipulated to the truthfulness and accuracy of the Factual Resume, swore the facts in the factual resume were true and correct and acknowledged the Factual Resume would be submitted as evidence. He averred his plea of guilty was freely and voluntarily made, and stated that after thoroughly reviewing all legal and factual aspects of his case with his lawyer, he was fully satisfied with his lawyer's legal representation and concluded it was in his best interest to enter into the plea agreement and plead guilty rather than proceed to trial because he was, in fact, guilty of the charged offense. On the date he pled guilty, co-defendant Fry confirmed the terms of the Plea Agreement in open court. The Court accepted co-defendant Fry's plea and the plea agreement.

Defendant DEMMITT did not plead guilty and, on August 16 - 19, 2011, was tried before a jury. During defendant's trial, the government called co-defendant Fry toward the end of its case-in-chief. Tr. 498-566. During Fry's testimony, the government offered Fry's Plea Agreement and Factual Resume for admission into evidence. Tr. 499. Over defense counsel's objection to the documents as hearsay, the trial court admitted both documents into evidence. Co-defendant Fry testified at trial, however, that defendant DEMMITT was not involved in the fraud and that he had advised the prosecution, *after* he pled guilty, that defendant was not involved in the fraud. Tr. 522-23, 553. At trial, defendant DEMMITT presented no witnesses or evidence, arguing instead that co-defendant Fry had been the sole perpetrator of the scheme.

On August 19, 2011, the jury found defendant guilty of conspiracy, thirteen (13) counts of wire fraud, and all eleven (11) counts of money laundering.

On September 23, 2011, a Presentence Investigation Report (PSR) was prepared for defendant. Based on defendant's Criminal History Category of I and Total Offense Level of 26, the Guideline Range of Imprisonment was 63 to 78 months.[1] The PSR found the victims suffered individual losses of $213,584.01, $291,200, $78,000, and $20,000, resulting in a total loss of $602,784.01. The PSR noted, however, that co-defendant Fry paid back the $20,000 to one victim reducing the total loss to $582,794.01. The PSR further noted Allianz had reimbursed the other victims for their losses, making them whole, and thereby assuming the total losses of the remaining victims. The PSR also noted Allianz had paid attorney's fees incurred by the victims totaling over $150,000, but that this additional loss to Allianz was not included in the loss calculations. The PSR stated, "While there are six victims [the loss of $291,200 was incurred by a man and wife] involved

---

[1] Based on co-defendant Fry's Criminal History Category of I and Total Offense Level of 23 (differing from defendant DEMMITT's as a result of a 2-point subtraction for acceptance of responsibility and a 2-level increase for being convicted under 18 U.S.C. § 1956 in Count 27), the Guideline Range of Imprisonment for co-defendant Fry was 45 to 57 months. Fry was sentenced to a term of 87 months.

in this case, only one, Allianz Life Insurance Company, suffered a financial loss after making four of the five victims whole. Codefendant Fry repaid the fifth victim []. Allianz is the victim in this case and is owed restitution in the amount of $582,784.01." The PSR, noting restitution shall be ordered for the full amount of the victim's loss in the case of an identifiable victim, recommended restitution in the amount of $582,784.01 be assessed.

Defendant's only substantive objections to the PSR were to (1) the jury's finding of guilt, and (2) the addition of two levels pursuant to USSG § 3B1.3 for abuse of trust. Defendant did not object to the "actual loss" attributed for restitution. On November 4, 2011, defendant, through counsel, requested the trial court impose a term of imprisonment at the bottom of or below the advisory guideline range.

On November 10, 2011, the District Judge conducted a sentencing hearing. At the hearing, defendant was sentenced to a term of 70-months imprisonment and ordered to pay restitution in the amount of $582,784.01, jointly and severally with co-defendant Fry. In its Statement of Reasons, the trial court explained:

> The Court imposed the penalty at 70 months on each count to run concurrently for a total of 70 months which is in the middle of the guideline range, but the Court would have imposed the same sentence under statute based on the facts of the case. This is a serious offense that involved abuse of trust, on both a technical and personal level. The sentence reflects the Defendant's lesser level of culpability than that of the co-defendant. The sentence addresses the Court's sentencing objectives of punishment and deterrence.

Defendant appealed her conviction and sentence to the United States Court of Appeals for the Fifth Circuit. *United States v. Demmitt*, No. 11-11120. The appeal was based on alleged evidentiary errors (including trial court error in permitting the prosecution to introduce co-defendant Fry's factual resume as substantive evidence of defendant's guilt), an improper jury instruction as to deliberate ignorance, and as to one of the money laundering counts, a fatal variance from the indictment or, alternatively, insufficient evidence to support the conviction. On February 1, 2013,

the United States Court of Appeals for the Fifth Circuit issued a 21-page opinion finding *inter alia* the trial court erred when it admitted co-defendant Fry's factual resume and that its error was an abuse of discretion, but that the error was harmless due to the totality of the evidence adduced at trial. The Fifth Circuit affirmed defendant's conviction except as to Count 27, vacated defendant's conviction as to County 27, and remanded the case to the district court.

On April 5, 2013, an Amended PSR was prepared. Based on defendant's Criminal History Category of I and Total Offense Level of 24, the Guideline Range of Imprisonment was 51 to 63 months. The Amended PSR found:

> While there are six victims involved in this case, only one, Allianz Life Insurance Company, suffered a financial loss after making four of the five victims whole. Codefendant Fry repaid the fifth victim []. Allianz is the victim in this case and is owed restitution in the amount of $579.784.01. ***(THIS AMOUNT IS $3,000 LESS THAN THE ORIGINAL LOSS CALCULATED WHICH WAS THE AMOUNT NOTED IN COUNT 27).***

The Amended PSR, noting restitution shall be ordered for the full amount of the victim's loss in the case of an identifiable victim, recommended restitution in the amount of $579,784.01 be assessed. Defendant did not file objections to the Amended PSR.

On April 17, 2013, counsel for defendant requested the trial court impose a sentence below the revised guideline range based upon post-sentencing rehabilitation. On April 18, 2013, the District Judge conducted a sentencing hearing during which defendant was sentenced to a term of 60-months imprisonment and ordered to pay restitution in the amount of $579,784.01, jointly and severally with co-defendant Fry. The trial court explained:

> The Court imposed the penalty at 60 months on each count to run concurrently for a total of 60 months. This is an egregious offense and the nature of the offense involved a personal and technical level of abuse of trust. The sentence reflects the defendant's lesser level of culpability than the codefendant. The sentence addresses the Court's sentencing objectives of punishment and deterrence.

Defendant appealed her conviction and amended sentence to the United States Court of Appeals for the Fifth Circuit, again challenging the admission of the factual resume of co-defendant Fry during defendant's trial. *United States v. Demmitt*, No. 13-10491. On April 16, 2014, the Fifth Circuit held defendant's argument was "foreclosed under the law of the case doctrine," granted the government's motion for summary affirmance, and affirmed the judgment of the district court. On October 6, 2014, the United States Supreme Court denied defendant's petition for a writ of certiorari seeking review of the appellate court's ruling.

On February 7, 2015, defendant executed the instant Motion Under 28 U.S.C. § 2255, such motion being filed of record with the Court on February 17, 2015. The government was not ordered to file a response to defendant's motion to vacate.

## II.
## DEFENDANT'S ALLEGATIONS

The Court understands defendant to present the following claims:

1. The trial court erred in allowing the factual resume of defendant's co-defendant to be admitted into evidence;

2. Defendant was denied effective assistance of trial counsel because counsel failed to object to and challenge the "actual loss" attributed to defendant for restitution; and

3. The appellate court erred in finding the above error was harmless on the jury's deliberations.

On February 19, 2015, the undersigned directed defendant to clarify her claims by addressing the following:

1. The bases on which she contends counsel should have challenged the actual loss amount;

2. The amount she contends should have been attributed to her for restitution; and

3. Any other specific facts necessary to determine the exact claim defendant is attempting to assert.

On May 5, 2015, defendant filed a response stating:

1. "Defense counsel should have challenged the 'Actual Loss' amount attributed to the defendant since the victims and the insurance company was included in the overstated amount. The defendant, co-defendant, the company, as well as the clients were victims of identity theft. The defendant was assisting her clients with clearing their names."

2. "The amount of restitution that the court attributed to the defendant was not agreeable. The defendant did not plead guilty to any wrong doing, this is unknowledgeable of any restitution amount that could be attributed to her."

3. "Defense counsel never disputed or challenged the fact of the annuity policies had been changed by the parent company, 'Allianz,' without the defendant's knowledge or permission."

## III.
## STANDARD OF REVIEW

A motion to vacate, set aside, or correct a conviction or sentence under 28 U.S.C. § 2255 is reserved for (1) transgressions of constitutional rights, and (2) for that narrow compass of other injury that would, if condoned, result in a complete miscarriage of justice. *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981). In determining whether a claim of error is cognizable under section 2255, a distinction is drawn between constitutional or jurisdictional errors on the one hand, and mere errors of law on the other. *Id. See Grimes v. United States*, 607 F.2d 6, 10-11 (2d Cir. 1979). Consequently, "there are four grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is 'otherwise subject to collateral attack.'" *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).

A defendant who has been convicted and has exhausted or waived his right to appeal is presumed to have been fairly and finally convicted. *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991). A section 2255 collateral challenge "may not do service for an appeal." *United*

*States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593 (1982). Therefore, *constitutional* or jurisdictional claims which could have been raised on direct appeal <u>cannot</u> be raised for the first time in a section 2255 motion <u>unless</u> the prisoner can show both "cause" for his or her failure to raise the issue on appeal and "actual prejudice" resulting from the constitutional violation, or that the constitutional violation has probably resulted in the conviction of one who is actually innocent. *Shaid*, 937 F.2d at 232. "*[N]onconstitutional* claims that could have been raised on appeal, but were not, may <u>not</u> be asserted in collateral proceedings. . . . Even those *nonconstitutional* claims that could <u>not</u> have been asserted on direct appeal can be raised on collateral review <u>only if</u> the alleged error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Stone v. Powell*, 428 U.S. 465, 477 n. 10, 96 S.Ct. 3037, 3044 n. 10, 49 L.Ed.2d 1067, 1077 n. 10 (1976) (emphasis added).

IV.
### ADMISSION OF FACTUAL RESUME

As her first ground, defendant states simply "violation of constitutional rights" and as supporting facts states, "The Court committed error by allowing the factual resume to be used, which is against the [Federal] Rules of Evidence." Defendant's blanket assertion of a "violation of constitutional rights," however, does not, in and of itself, assert a claim of constitutional dimension. Defendant does not identify the constitutional right alleged to have been violated.

On direct appeal, the Fifth Circuit treated this claim as one of "nonconstitutional trial error." *U.S. v. Demmitt*, No. 11-11120 at 5. This Court's review of defendant's ground reveals her claim to be a nonconstitutional evidentiary error. As noted above, section 2255 does not offer recourse to all who suffer trial errors. Even an "error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805, 811 (1979). Defendant cannot raise her nonconstitutional claim

in this collateral 2255 proceeding, unless the alleged error constituted a "fundamental defect which inherently result[ed] in a complete miscarriage of justice." *Reed v. Farley*, 512 U.S. 339, 353, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994). Defendant's claim fails to make such a showing.

The Fifth Circuit Court of Appeals specifically addressed the issue of harmless error in its opinion. The Court, noting it "must consider the admission of the factual resume 'not in isolation, but in relation to the entire proceedings,'" held:

> The parties do not dispute that at the time the factual resume was entered into evidence, the document was not yet a prior inconsistent statement. We agree because, as demonstrated by the above testimony, at the time the evidence was admitted, Fry had not yet made any inconsistent statements concerning facts also contained in the factual resume.
>
> . . .
>
> After carefully reviewing the record, we conclude that the erroneous admission of the factual resume does not require reversal. Although the case against Demmitt was circumstantial, in light of the volume of evidence presented by the prosecution that supports the same facts and inferences as those in the factual resume, we conclude the admission was harmless.
>
> The factual resume stated that Demmitt was actually involved in the fraud. Other trial testimony could lead to the same conclusion or the conclusion that she was deliberately ignorant of it, either of which is sufficient basis for conviction.

The Fifth Circuit noted "there were four types of evidence presented at trial, in addition to Fry's factual resume, that lead to this conclusion." The Court identified that evidence as follows:

1. "[A]mple testimony that Demmitt was made aware of problems with client accounts";

2. "[T]estimony that Demmitt tightly controlled the business and that Fry frequently consulted Demmitt before he made any decisions';

3. "[S]ignificant evidence the Demmitt's annuity commissions alone could not have supported her business or personal expenses, yet she and Fry made frequent and expensive purchases"; and

4. "[S]ubstantial evidence that Demmitt participated in or that her bank accounts received suspicious financial transactions."

After reviewing the evidence against defendant, the Fifth Circuit held:

> We hold that the record shows the Government presented significant evidence, albeit circumstantial, that demonstrated Demmitt was actually involved in Fry's scheme or deliberately indifferent to it. Given that this evidence is cumulative of the factual resume, we hold that the trial court's error in admitting the factual resume was harmless and does not warrant reversal.

Any attempt by defendant to re-litigate an issue which has already been determined by the appellate court on direct review is precluded by the law of the case doctrine.

> The doctrine of the law of the case "expresses the practice of courts generally to refuse to reopen what has been decided." The doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." While not as inflexible as the rules of issue and claim preclusion, the law of the case doctrine nonetheless creates a strong presumption of finality within the case, resting "on the salutary and sound public policy that litigation should come to an end."

*United States v. Mendez*, 102 F.3d 126, 131 (5th Cir.1996) (citations omitted). Defendant's claim of evidentiary trial court error should be DENIED as it does not assert a constitutional claim and because the claim has already been determined by the appellate court on direct review.

## V.
## EFFECTIVENESS OF COUNSEL

The proper standard for judging a defendant's contention that he is entitled to relief on the ground that his trial counsel rendered ineffective assistance is enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the *Strickland* standard, a defendant must show counsel's performance was deficient. This requires showing counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed to a criminal defendant by the Sixth Amendment to the United States Constitution. In order to amount to ineffective assistance of counsel, counsel's performance must have fallen below an objective standard of reasonableness as determined by the norms of the profession. Counsel's performance is

reviewed from counsel's perspective at the time of trial, not from hindsight. *Id.* at 689. A reviewing court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance. *Id.*

A defendant must also show he was prejudiced by counsel's deficient performance. To establish this prong, defendant must show counsel's errors were so serious as to deprive defendant of a fair trial. Specifically, defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different or that the errors were so serious as to deprive the defendant of a fair trial with a reliable result." *Id.* at 694.

In her second ground, defendant asserts she was denied her constitutional right to effective assistance of counsel because trial counsel "failed to challenge the 'actual loss' attributed to the defendant for restitution." In her response to the Court's Briefing Order seeking clarification as to the basis or bases for defendant's contention that counsel should have challenged the actual loss amount, defendant stated simply that counsel should have challenged the actual loss amount, which was "overstated," because the victims and the insurance company were both included in the loss amount. Defendant's response provided no specifics of what she contends the actual loss should have been, nor did it assert any other ground for challenges to the actual loss amount.

It appears defendant is arguing the actual loss amount was incorrect because the PSR "double counted" the losses, including both losses to the victims and the insurance company. The PSR and the Amended PSR, however, were clear that since Allianz (the insurance company) had reimbursed the other victims for their losses and made them whole, Allianz had assumed the total losses of the other victims and was the only remaining victim that suffered a financial loss and was owed restitution. The PSRs did not identify any individual loss incurred by Allianz other than the

unpaid attorney's fees, which the PSRs clearly stated were not included in the loss calculations and for which defendant was not ordered to reimburse Allianz by way of restitution. Defendant has not demonstrated the actual loss amount was based upon any double counting, or that it included any losses to any victims other than defendant's clients, which losses were ultimately assumed by Allianz. Defendant has not demonstrated the actual loss amount was in error or was, in any way, subject to a valid objection by counsel.

Defendant has not identified any valid objection counsel could have made to the actual loss calculation or advanced any other theory which could have been presented to challenge the actual loss amount. Nor has defendant demonstrated how any objection would have resulted in a reduced amount of ordered restitution or would have otherwise altered the outcome of the case. As defendant has failed to demonstrate how trial counsel's failure to object to the actual loss was deficient or how an objection would have resulted in a different result, defendant fails to show how any actions or inactions of trial counsel amounted to constitutionally ineffective assistance of counsel. Defendant's second ground should be DENIED.

Even if defendant had presented a more substantial argument that the amount of restitution assessed by the trial court was erroneous, defendant is still not entitled to relief. Complaints concerning restitution may not be addressed in section 2255 proceedings. *United States v. Hatten*, 167 F.3d 884, 887 (5th Cir. 1999).

## VI.
## APPELLATE COURT ERROR IN FINDING ERROR HARMLESS

As her last ground, defendant states simply "violation of constitutional rights" and as supporting facts states, in full, "Defendant was prejudiced against the court's analysis minimizing the effects the harmless error had on the jury's deliberation." The undersigned interprets this ground

to be a claim that the Court of Appeals for the Fifth Circuit erred in determining that the trial court evidentiary error in admitting co-defendant Fry's factual resume was harmless error.

This Court does not have jurisdiction to entertain claims of appellate court error as a district court does not sit in direct review of a federal appellate court's holdings. Rather, the United States Supreme Court, through a petition for a writ of certiorari, reviews the appropriateness of a federal appellate court's rulings. In any event, defendant has not alleged a constitutional claim that may be considered by this Court on federal habeas review of her criminal conviction and sentence. Defendant's claim is not appropriate in a section 2255 motion to vacate. Defendant's petition for a writ of certiorari of her second appeal was denied. Further, the Court of Appeals for the Fifth Circuit thoroughly analyzed defendant's claim regarding the admission of co-defendant Fry's Factual Resume and determined that while admission was error, the error was harmless based on the significant evidence which was cumulative of the Factual Resume. Defendant fails to dispute this determination in any meaningful way but, instead, asserts in conclusory fashion that the appellate court's ruling was erroneous. Similarly, defendant asserts she was prejudiced by the appellate court's alleged erroneous ruling without any factual basis. Defendant is entitled to no relief under this ground.

## VII.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed by defendant JANICE EDWINA DEMMITT should be DENIED.

## VIII.
## INSTRUCTIONS FOR SERVICE and NOTICE OF RIGHT TO OBJECT

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this _20th_ day of January 2017.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).